MABEL REES et al., Appellants, *v.* TEACHERS' RETIRE-
MENT BOARD OF THE CITY OF NEW YORK et al.,
Respondents.

**Municipal corporations — New York city — officers — injunc-
tion — Teachers' Retirement Board — appointment of secretary
a " decision " within meaning of charter provision requiring
concurrence of one member elected by teachers for decision
of Board — complaint alleging appointment of secretary with-
out such concurrence and asking injunction states cause of
action — injunction pendente lite properly granted.**

The appointment of a secretary to the Teachers' Retirement Board
is a " decision " of the Board within the meaning of subdivision
C-11 of section 1092 of the charter of the city of New York, as amended
(L. 1917, ch. 303), which provides that " the concurrence of the
comptroller or of one member appointed by the mayor, of a member
elected by the retirement association (the teachers) and of at least
two other members shall be necessary for a decision of the retirement
board." Such an appointment, therefore, may not be made without
the concurrence of one member of the teachers'' representatives, and
a complaint alleging that a secretary had been appointed by the vote
of four members of the Board, without the concurrence of either of
the members elected by the teachers and demanding that defendants
be restrained from signing or paying any warrants for his salary,
states a cause of action and an injunction *pendente lite* was properly
granted.

*Rees* v. *Teachers' Retirement Board*, 221 App. Div. 646, reversed.

(Argued January 9, 1928; decided February 14, 1928.)

APPEAL, by permission, from an order of the Appellate
Division of the Supreme Court in the first judicial depart-
ment, entered November 4, 1927, which reversed an
order of Special Term granting a motion for an injunction
*pendente lite* and denied said motion.

The following question was certified: " Does the com-
plaint herein state facts sufficient to constitute a cause
of action? "

*Leonard M. Wallstein* and *Ralph M. Frink* for appellant. The " appointment " of a secretary of the Board is but one kind of " decision " by the Board and, since by the plain, unambiguous and all-embracing language of the statute the concurrence of a teacher-member is required for all decisions, there is no room for an interpretation of the statute which would differentiate this decision from others and which would except this one kind of decision alone from the requirement of concurrence by a teacher-member. (*Johnson* v. *H. R. R. R. Co.,* 49 N. Y. 455; *McCluskey* v. *Cromwell,* 11 N. Y. 593; *Mushlitt* v. *Silverman,* 50 N. Y. 360.) The statutory requirement of the concurrence of certain members of the Board as essential to the validity of a Board decision is intended for the plain purpose of protecting both the city and the teachers from the domination of either by the other, such protection being assured by prescribing a common kind of joint control. (*Craig* v. *Matthews,* 238 N. Y. 88; *Craig* v. *Commissioners,* 208 App. Div. 412; *McCarthy* v. *Mills,* 214 App. Div. 70; *Matter of Ashmead,* N. Y. L. J. March 13, 1925.)

*George P. Nicholson, Corporation Counsel* (*William E. C. Mayer* and *J. Joseph Lilly* of counsel), for respondents. The Legislature has expressly authorized and empowered the Board of Retirement to " appoint " its secretary. (*Matter of Craig* v. *Matthews,* 238 N. Y. 88.)

ANDREWS, J. The Teachers Retirement Board of the City of New York consists of seven members, three of whom are elected by the teachers themselves. Its object is to secure pensions to teachers on their retirement. To its funds, held by the board of trustees, and now amounting it is said to some $39,000,000, the teachers have contributed sixty per cent. As beneficiaries of the trust they may appeal to the courts to prevent the misuse of the trust estate. So may a minority of the trustees.

The question before us is whether the payment of a

salary to Irving Crane, claiming to be secretary to the Board, would be such a misuse. If he is not such secretary, payments to him are not justified. This is not a proceeding to try his title to the office. That matter is involved but incidentally.

Mr. Crane was appointed secretary by the vote of four members of the Board. There was no concurrence in his choice by either of the three members elected by the teachers. The statute (Greater N. Y. Charter, amd. L. 1917, ch. 303, § 1092, subd. C-11) provides that " the concurrence of the comptroller or of one member appointed by the mayor, of a member elected by the retirement association [the teachers], and of at least two other members shall be necessary for a decision of the retirement board." Is the appointment of a secretary " a decision " within the meaning of this section?

There seems to have long been jealousy between the municipal authorities and the teaching staff of the city as to the management and control of this particular fund to create which both contribute. The provision quoted apparently was a compromise between conflicting claims. Its precise meaning is not clear. "A decision " has been defined as " the determination of a question." Whether or not as here used it means the determination of every question which may come before the Board, about which there may be difference of opinion, choice as to its policy or wisdom, depends upon the statute as a whole. For in it no definition of the word is given.

Such is the interpretation sought by the appellants. The respondents, on the contrary, would limit its scope to cases of " judicial action taken by the Board with regard to the retirement of a particular teacher and not to action or matters of an ordinary administrative nature."

Paragraph C which contains the limitation quoted is in the early part of the section. It creates the Retirement Board and fixes its membership. It then specifies certain of the powers and duties of the Board. It shall elect a chair-

man and appoint a secretary and necessary medical, clerical and other employees. It shall fix their salaries, subject to the approval of the Board of Estimate and Apportionment. It shall establish rules for the administration of its funds. It shall adopt mortality tables and certify the amounts required to be contributed by teachers. Then, and in connection with these powers is inserted the important section 11. Finally the Board is to perform such other functions as are required by the provisions of the act. Among them it is to control, manage and invest its funds, and to purchase and sell securities (E, 1); to order payments on warrants (E, 3); to submit an estimate of the amounts required for its expenses as a basis for appropriations (F, 1); to certify the amount which the city is required to pay to maintain the contingent reserve fund (F, 2); to make rules as to deductions from teachers' salaries (F, 5); to certify to the heads of departments the proper amount to be deducted from the payroll of each teacher (F, 5, c); to restore to the service a teacher retired for disability, at discretion (L, 4); to grant financial relief to teachers (R), and finally to appoint a medical board of three physicians (T).

The provisions as to retirement come at the end of the section. They are largely self-executory. The amount of each pension is fixed by the law itself. If retirement comes because of disability the Board has no discretion. It must retire the teacher upon the certificate of the medical board (L, 1). As to others any teacher 65 years old or with 35 years of service must be retired on application. One 70 years old must be retired in any event. Again the Board has no discretion. There is a question of fact involved in these cases as to whether the teacher is 65 or 70 or whether he has served 35 years. As to the latter the Board may have had originally some leeway in cases of teachers claiming credit for service before 1917. Each teacher files with the Board a detailed statement of such service rendered by him. As to what credit he shall be

given, the details are fixed. This statement is to be verified by the Board. There can be little room for dispute. It then issues to the teacher a certificate as to the aggregate time of past service. This is conclusive unless modified by the Board or by the Board of Education (H). So when application for retirement is made all the Board may do is to examine this certificate.

If retirement is asked because the age of 65 is reached or required because the teacher is 70 the Board also has no discretion. In the few cases where there may be doubt, doubtless it will refuse to order a warrant until in some manner, by mandamus or otherwise, a judicial decision as to the fact is obtained. But no trial before the Board is provided. The teacher has an absolute right to retire at 65. He must retire at 70 but cannot be forced to retire before unless disabled. No dispute, therefore, as to retirement is to be settled by the Board except the preliminary and narrow question as to the credit for service rendered before 1917, to be allowed a teacher. His service thereafter is a matter of official record.

In view of the slight field of action as to retirement granted to the Board it would not seem possible that the Legislature, in speaking of " a decision " in another part of the section, intended to restrict it to a determination as to certificates in the limited class of cases described. Action required by the act itself could hardly be called " a decision of the retirement board." A decision implies the power to say " Yes " or " No." Clearly the adoption of mortality tables, the investment of its funds, the purchase and sale of securities involve a more important exercise of discretion, a more important choice between alternative courses of action than a decision that A is to be credited with 5 or 6 years of service. The integrity of the fund itself depends upon what course the Board adopts. Here the beneficiaries of the trust have a vital interest. It is not unreasonable that the Legislature

thought they should have through their representatives a veto power. We conclude that this was the design.

If the adoption of mortality tables or the designation of investments is " a decision " then the appointment of a secretary is one also. No distinction can be drawn. Under the statute the office is an important one. The selection of a proper candidate may involve questions of policy, provoke differences of opinion. We hold that the choice is " a decision of the board " and may not be made without the concurrence of one member of the teachers' representatives.

Some amendments have been added since the original statute was adopted. That of May, 1920, in a limited class of cases, permits the Board upon evidence, to determine certain facts. It in no way affects our conclusion as to the original meaning of the Legislature.

The order of the Appellate Division should be reversed and that of the Special Term affirmed, with costs to the appellants in this court and in the Appellate Division, and the question certified answered in the affirmative.

CARDOZO, Ch. J., POUND, CRANE, LEHMAN and KELLOGG, JJ., concur; O'BRIEN, J., dissents.

Ordered accordingly.